Back on record. Judge Smith, can you hear us okay? I can. Okay, great. We'll go back on record. The next case on the calendar is 24-6273, 24-6277, Pliszka v. Axos Bank. Good morning. I'm Jay Ramsey for Axos Bank. I'd like to reserve two minutes for rebuttal. You bet. Just keep an eye on the clock, please. Yes, we'll do. Thank you so much. So this case is about a bank that had an agreement with its customers. That agreement had a clause in it that permitted the bank to make modifications. Consistent with this court's decision in Davis, it made a modification. It provided notice to all of the customers of that modification. It described the modifications and also provided an opportunity to opt out. Our plaintiffs here did not opt out, continued with their services with the bank, and after the modified agreement went into effect, brought a class action case in court, and we're seeking to compel arbitration. The court, the district court, well, let me get straight to standing because I think that was, we were directed to do that. So I want to be clear. If I lose today, we will be back in court. There's three ways that we were denied our motion to compel arbitration and therefore, in my view, obviously have standing and, you know, it's proper to be here on appeal. So there's the first two, there's the three ways are this. We moved to compel arbitration under an arbitration provision in the modified, the new account agreement, PVAA, and also the new OAA, online access agreement, with respect to both of those. And those are the ones that we say apply, not the old one. We understand. That we, you know, the court just denied our motion with respect to those, that motion. You moved to compel arbitration and the court compelled arbitration. So it did not. So that's not the way you wanted it, right? You wanted the arbitration pursuant to the original, sorry, the modified agreement, not the original agreement, right? Correct. And so why do we have jurisdiction? So we cited a case law in our briefing that you have to, that's actually three separate orders. And with respect to the later two orders, we were denied. On the first order, the original online access agreement, we were compelled to arbitration, but only in the first instance for the arbitrator to decide whether the claim was even arbitrable under that clause. We went down there with respect to, down there, over to arbitration with respect to Pliska and Ash. The arbitrators there said, no, it's not arbitrable. And so at that point, we were denied arbitration under the OAA and then denied arbitration under the modified clauses. And so the entire ruling is that we were denied. It's interesting, Stemple, who was a third plaintiff, who's no longer with us, that claim did get compelled, or we went down to arbitration with respect to him. And the arbitrator there found that it was arbitrable. And he's obviously- But that's not before us. Correct. And so I think the difference there sort of shows why this case ought to be before you, because we moved to compel with respect to the modified versions. We believe those are the only ones that actually apply. We modified the clauses. The old one, in our view, doesn't apply at all. And so we were denied arbitration. Do you have any case law where we applied the FAA in this way? No. I'm not aware of applying the FAA- Well, in this way, I'm not aware of any case law going the other direction either. They cited three in, I think, a Rule 28 letter shortly before argument. In one of those- And none of those are like this. In one of them, the Van Dusen case, the court reserved judgment with respect to arbitration, whether it was going to compel arbitration. And it issued a case management order that says, well, we're going to do some on that. I'd like to figure out what this discovery is going to result. And they appealed on that. As I look at your case, I mean, Congress clearly wanted people to know one way or another whether they were going to be in arbitration. They wanted to move quickly. You've got a hybrid here, and I honestly don't see how we have jurisdiction. Slicing and dicing. How do we have jurisdiction in this case at this point? Because we were denied our right to arbitrate under the clauses that we say are in effect. We moved with respect to the new clauses, that those are the agreements that are in effect. Those are the ones that apply. And the court said, no, they don't. But it turns out that the original agreement also had an arbitration clause, a different one. It's not the same clause. The later ones are certainly broader. And so we went down to arbitration under the old, not as broad clause. And we had two, say, not within the scope of the clause and one that did. It's a little bit odd. Basically, you've got to, instead of having an arbitration clause, you've got a series of them. You're appealing not all of them, but some of them. And that's why I'm wondering how we end up with jurisdiction. The court's clear. I mean, the Congress is clear. You've got a nice, clean denial. Great. But we don't have that here. Why do we have jurisdiction? You do have a very clean denial with respect to the modified clauses. Excuse me. Can I interrupt you right there? I think you moved in. It may change your answer to Judge Smith's question. I don't know. But my read of the record is that you sought to compel arbitration in the alternative. Yes. We moved with respect to the new clauses. The new one and the old one. And then as a fallback argument, pointed out that there was arbitration clause. Right. So that's why Judge Smith is asking. I mean, you won. That's why that's the problem that we have with the FAA. And I just want to, in fairness, give you a chance to respond to that. But I did not read the record to say that you only moved or sought to compel arbitration as to the modified agreement, sir. I — that's fair. But we — our primary position was that the new ones applied, because that — we modified the agreement prior to their filing. That's what we contend actually applies. And so this is not a situation like one of the cases that they cited where you have two agreements that are in play at the exact same time. Right. We say old agreement, gone. New agreement. And they cited a case where there were two agreements where each had an arbitration clause. One required one form. One required a different form. And the court — and the court granted it with respect to both. Yes, there's an arbitration provision in both agreements. But I'm going to send it to one venue as opposed to a different one. And the party moving to compel arbitration there appealed an order that fully granted its motion. And here we have an order partially granting and partially denying. And it's the denial that we — we are appealing. It's not the grant portion. And again, we go — if I lose today, we're going to go back down to district court, and we are going to be in court. And I don't know how that is not a denial of a motion to compel arbitration. And so it would seem odd to me that if I went back down to district court, we enter a new order that's consistent with the prior order. We went to arbitration. No denied arbitrability. And so now there's an order fully denying my motion to compel then. I — that strikes me as — perhaps that's the right way to do it — strikes me as odd, because here we are today having fully denied the motion to compel arbitration. Questions? Would you like to reserve the bulk of your time? So you would not like me to address the merits? Go right ahead. I thought you were — Oh, no, no, sorry. Okay, so on the merits, there's two primary issues. There is, did we follow the proper notice procedure in order to have a modified clause affected? And then whether Peleg, the California Court of Appeal decision, basically says the implied covenant doesn't permit you to amend or to modify a dispute resolution provision when there's a claim that has accrued but not yet filed. Certainly with a filed claim, you know, making a change mid-course, they file in court, and I say, whoop, just kidding, we're going to amend it and do arbitration. That's not permitted, absent, you know, an express agreement from them. But as to accrued claims, there is no case law that — I agree that the implied covenant would apply. To the extent there's a provision in an agreement that allows a bank or any other company to modify its terms, it has to exercise that discretion consistent with the implied covenant. But that then begs the next question, which is whether the modification is either subjectively unreasonable or objectively unreasonable. There's no evidence of that here. The Peleg case doesn't actually address that issue at all. It rules under Texas law about whether a contract with a modification provision is illusory. It has some dicta with respect to California law. Then there's no California case law that holds that the implied covenant prohibits automatically a revision to an arbitration clause as to an accrued but not yet filed claim. There's two cases they cite. They both come up within the context of an employment agreement. With one of them, that's Avery, the claim had already been filed in court. So that's an already filed claim, not an accrued claim. And then with Pang, it's not — the court doesn't even address that issue at all. The only thing Pang was looking at was whether an arbitration provision that allowed for modifications was unconscionable. But there was actually no modification made whatsoever in that case. And so we have the Trudeau case which we cited versus Google. I would point the court to that decision. It goes through a why Peleg what doesn't apply. And in our precise context says when there is a modification and a proper one done under the Ninth Circuit's precedence in Nordstrom, Davis v. Nordstrom, that you would have to have some additional showing as to why the new clause is unreasonable in some way such that it would trigger the implied covenant. Just purely modifying it and saying you can take your claim from court and do it in arbitration without any change of rules. So for example, the Heckman case went through, well, with that new arbitration clause, we have limited discovery. It may take a long time in order to get to my claim. There's lots of reasons why the clause itself limited or harmed the plaintiff's ability to pursue the claims. And there's no argument here to that effect. And so they haven't established a breach of the implied covenant. And then on the notice piece, I would point the court to the Davis case as our best argument. It's remarkably similar to this case. They had a dispute resolution provision that required arbitration on an individual basis. But, and this was in June of 2011, but that if you were going to bring a class action, you had to do it in court. And the reason for that is at that time in California, you couldn't have a class action waiver. Concepcion comes out, the Supreme Court decision saying, no, California's rule doesn't, you know, conflicts with the FAA. And so then the next month, Nordstrom modifies its arbitration provision, sends out notice. The notice is actually not as clear as ours, if you compare the two. And the plaintiff employee there, after it goes into effect, files suit in court. And that suit relates not just to conduct that occurred after the modification. It certainly encompassed accrued claims. It was about meal and rest break periods and wage and hour violations going back in time. And so that case, you have already accrued claim applying the modified provision when there was notice, just like here. Absent further questions, I'll reserve the balance of my time now. You bet. Thank you. Good morning, your honors. May it please the court. My name is Philip Black from Wolf Popper LLP. I'm appearing today on behalf of Plaintiff Appellee Mr. Pliska. Joining me is my colleague Sophia Gold from Khalil Gold. She's appearing on behalf of Plaintiff Appellee Ash. I plan to address the jurisdictional issue as well as the notice and assent issue. And Ms. Gold will address the implied covenant issue. So starting with jurisdiction, the order here granted the defendant's motion to compel arbitration. That's at ER 16 for the Ash case, ER 32 for the Pliska case. It does not say granted in part and denied in part. It says granted and then it says the parties are ordered to proceed to arbitration. The portion that says denied was as to UFB's motion to dismiss. That is the part that says denied. So that's what the court said. And then there's what the court did, which was direct the parties to go to arbitration. Not don't go to arbitration, go to arbitration. And we would submit that under the Bushley case, which my colleague tried to distinguish, that this is an order denying arbitration, granting arbitration rather, and it's not appealable. In Bushley, again, there was one agreement that there were two agreements. The company moved under both at the same time. The district court concluded that one of them was not properly executed. It's a very similar fact pattern to what we have here. And contrary to what my colleague said, if you look at Bushley 360 F3rd at 1151, the court there did deny the motion to compel arbitration under the company's preferred agreement and granted it under the other one. And the company nevertheless appealed under the FAA and the Ninth Circuit said, well, what happened here? At bottom, the court said go to arbitration. That is not under the plain language of the statute. That is not the type of order that we have jurisdiction over. And finally, as to counsel's argument that they think really only the updated versions apply but not the original version, it was their strategic choice here to move to compel arbitration under all three separate agreements. If it's really the case that they would only consent to the outcome of an arbitration under the updated agreements, they should have moved under just those agreements. But the bedrock principle here is that arbitration is a matter of consent, not coercion. And so if they didn't consent to the arbitration that they moved under, the fact that they moved to compel arbitration under that agreement shows that that's something they consented to. They moved for individual arbitration. They got individual arbitration. The parties did that arbitration. We would submit that under the plain language. That's an unappealable order. Okay. So I want to be sure where we are on this. Do you agree that we do or do not have jurisdiction to hear this case? It's our position that you do not have jurisdiction to hear this case. Do not. Okay. Yes. We were kind of waiting for that, counsel. I will lead with that next time. I'm dating long. I'm dating long. I will lead with that next time, Your Honors. I appreciate that. That's okay. I was looking forward to your 28-J. I was looking forward. Yeah. All right. If I could just briefly, to the extent the panel reaches the merits, on the issue of notice and assent to the updated terms, I think it's helpful to clarify the timeline here. So UFB attempted to modify its agreements by sending one email on January 26, 2024. It said the new terms would be effective February 9th. But if you didn't want the arbitration, you could opt out by 30 days after the effective date. That would have been March 10th. It also said you have to close your account if you opt out and you have another 30 days to do that. But March 10th was the opt-out date. Mr. Pliska sued UFB in court and called to close his account on March 6th, within the prescribed deadline by the bank to act to opt out. So the question that the law dictates we ask here is, was there a manifestation of assent to the new terms? Or was there continued use of the product? In both cases, the answer is no, as to Mr. Pliska. What he did by calling to close his account and by suing in court, he's manifesting objectively to an objectively reasonable person, I don't want to do any business with this bank anymore, and I reject the arbitration clause. That's the manifestation. And under those circumstances, we would say there was clearly no assent. Unless the Court has any further questions, I'll give the remainder of my time to my colleague. It does not appear that we do. Thank you, Your Honor. Thank you. Good morning, Your Honors. May it please the Court. My name is Sophia Gold, and I will be addressing the implied covenant argument. I will be very clear that it is also our position that this Court does not have jurisdiction, and if it does not have jurisdiction, it need not address the implied covenant argument. Nevertheless, to briefly cover it, you heard my colleague Mr. Ramsey say that he agrees with us that the implied covenant in California prevents a defendant's ability to unilaterally modify a form contract in the middle of a pending dispute and have those changes apply to that dispute, particularly when the notice is silent as to the effect of the change on the pending dispute. And the critical fact here is the Sutanamon case was filed one month before UFB added their arbitration provision. UFB's briefs don't even mention the Sutanamon case, and we would not be standing here today arguing the implied covenant in Peleg unless that Sutanamon case existed. The District Court's decision hinged upon it. The Sutanamon case involved the same conduct that's at issue in our case. Plaintiff Ash is a class member in the Sutanamon case. The Ash case and the Sutanamon case share virtually the same class definitions, and all of the cases have been deemed related to one another. The fact that our case was not technically on file is not dispositive here, and in fact, a very similar situation was addressed by the California Court of Appeal in Avery v. Integrated Healthcare Holdings. I hate to put too much stock on a footnote, but a footnote proves critical in that case. It's footnote four, and there the court noted that the fact that the first case in a series of related cases was filed as a class action, and that the subsequent plaintiffs were class members in that class action meant, and I quote, that the claims of all plaintiffs were on file before the defendant had changed its arbitration provision. The same is true here. Because Ash is undoubtedly a class member in Sutanamon, his claims were deemed on file under California law for purposes of the implied covenant. UFB argued that Peleg should only apply in employment cases, but the implied covenant of good faith and fair dealing is inherent in every contract in California. The seminal case, v. Bank of America, was a consumer case, as was Cobb v. Ironwood, as was this court's decision in Heckman v. Live Nation, where it referenced the holding in the Peleg case with approval. Unless Your Honor has any further questions. Judge Smith? I have none. It appears we do not. Thank you. Counsel, give me just one minute. I'm going to finish a thought if I could, please. Okay, go right ahead. Thank you. Just briefly with respect to the implied covenant, I just want to be clear, I'm obviously not adopting their belief that we cannot change a clause as to an accrued, but not a filed claim. As a filed claim, I agree, we can't change it mid-course. And we dealt with the cases she cited. You're positioned that if a claim is accrued and your client had known about it, they would still be free to change the arbitration provision? Yes, subject to the limits of the implied covenant, but then you would need evidence with respect to whether the change made to the arbitration clause violates the implied covenant. And that, under California law, is subjective bad faith or objective unreasonableness, and there's no evidence here of that. Peleg purports to create this bright-line rule, no change whatsoever. And I think what highlights that is, imagine if we changed the arbitration clause in a way that benefited them, right? I don't know, made discovery easier for them, or cheaper for them, or whatever it might be. I can't imagine that that would be a breach of the implied covenant. And so you have to go the step down and get the evidence. I'm standing, because that's obviously on everyone's mind. Yes, a jurisdiction, excuse me. I want to be very clear about what happened. With respect to the old clause, that clause said that in the first instance, arbitrability, meaning whether it was in the scope, the claims in the scope of the clause, is dealt with by the arbitrator. Right, well, as to one of the agreements, right? As to the old one, correct. There's the personal deposit account agreement and the online access agreement, and one had an arbitration provision and one did not, right? Originally. Yes, but the one we were compelled to arbitrate under had the provision that said the arbitrator decides. Let's imagine it didn't, that wasn't that, but the court got to decide it, and the court issued an order that said not within the scope of that arbitration clause. In that case, we would have been denied with respect to that, and denied with respect to the modified clauses, and I certainly would have been able to appeal. Right, this is not a case where we were compelled to arbitrate the merits of the claim. We never got to that, right? We only got to that initial step, and we were still deciding whether the claim was arbitrable under that agreement. And so, and the court and the arbitrator said no. And so now we're back in court with a complete denial of our request to arbitrate. And I point out that he brought up- I don't think it's fair to characterize that, because you did arbitrate. I mean, you're describing to us you arbitrated some issues. So that doesn't mean that you got completely denied the motion to arbitrate. It means that you lost the arbitration. No, because the merits. If I lost the arbitration, I wouldn't be in court saying they don't have a claim on the merits. I lost whether the claim is arbitrable, whether it should go to arbitration. That's what the issue that we lost. He compelled with respect to arbitrability. We went to that issue. As to these two plaintiffs, we lost. And I would ask that the court really look at the Bush-Lee case. That case says- I see this. I just want to read this. Pursuant, a party cannot appeal a district court's order unless at the end of the day the parties are forced to settle their dispute other than by arbitration. That's exactly what happened here. We never got to the merits in arbitration, and now we're going to be going to court. We lost the arbitration motion. There's no avenue to review that order if you find that there's no standing. Thank you. Thank you both. We'll take that case under advisement and go on to the next case on the calendar.
judges: SMITH, CHRISTEN, FORREST